CITY OF PORT TOWNSEND, WASH., v. FIRST NAT. BANK OF CENTRAL CITY, COLO.

(Circuit Court of Appeals, Ninth Circuit. February 5, 1917. Rehearing Denied March 19, 1917.)

No. 2833.

1. MUNICIPAL CORPORATIONS ⊜⟼1010—COMPROMISE AND SETTLEMENT OF CLAIM —VALIDITY OF ACTION OF COUNCIL.

Evidence held to sustain a finding that judgments rendered against a city on warrants were not fraudulent or collusive, and that the subsequent action of the mayor and city council in deciding by unanimous vote not to appeal from such judgments, but to make a compromise settlement of the same by the issuance of new bonds at a lower rate of interest, was also free from fraud or collusion, and valid.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2181, 2182.]

2. MANDAMUS ⊜⟼154(7)—TO ENFORCE JUDGMENT AGAINST MUNICIPAL CORPORATION—ALLEGATION OF DEMAND TO LEVY TAX.

It is not necessary to allege a demand on a city council to levy a tax to pay an indebtedness as a condition precedent to proceedings for a mandamus to compel such levy, where the statute imposes the duty to make the levy, or where such demand would manifestly be useless.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 308.]

3. LIMITATION OF ACTIONS ⊜⟼25(8)—MANDAMUS.

Under the law of Washington, by which an action on a municipal warrant is not barred until six years after notice is given that there is money in the treasury to pay it, where no such notice is given, an action to obtain a judgment as preliminary to mandamus to compel the levy of a tax is not barred merely because it might have been brought more than six years before.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 125.]

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Action at law by the First National Bank of Central City, Colo., against the City of Port Townsend, Wash. Judgment for plaintiff, and defendant brings error. Affirmed.

⊜⟼For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The defendant in error brought an action at law against the plaintiff in error on warrants issued by the latter, drawn on the indebtedness fund of the city, to obtain a judgment, preliminary to mandamus against the city officers to compel them to levy taxes for the indebtedness fund wherewith to pay the warrants. The parties will be designated herein plaintiff and defendant, as they were in the court below. Upon an agreed statement of facts and the testimony taken the court made in substance the following findings of fact: That on February 1, 1898, the Bank of British Columbia, a foreign corporation, obtained a judgment in the state superior court against the defendant for the sum of $18,600.15 as the debt due to said corporation, which judgment by its terms bore interest at 10 per cent. per annum from its date; that on February 5, 1898, the Manchester Savings Bank, a corporation of New Hampshire, as plaintiff, obtained in the same court a judgment against the defendant for the sum of $7,788.71, as the debt due to the plaintiff, which judgment also bore interest at 10 per cent. per annum from its date; that those judgments were obtained upon street grade warrants drawn upon special improvement funds, to be paid out of special assessments on the property improved, and in payment for the improvements; that there was no contract, ordinance, or resolution by the defendant which authorized it to guarantee the payment of said warrants; that on February 17, 1898, the mayor and the city council of the defendant unanimously decided to pay said two judgments by issuing to the judgment creditors the appropriate amount of warrants of the defendant drawn against its indebtedness fund, which warrants were to draw interest at 6 per cent. per annum until paid, and the judgment creditors accepted the defendant's offer to that effect; that the defendant at the same time was making like disposition of certain other judgments then recently entered against it, and accordingly it issued against its indebtedness fund sundry warrants, serially numbered from 2 to 159, aggregating about $67,000, all dated on February 18, 1898, each warrant reciting that it was issued in part satisfaction of a specified judgment; that all said warrants were ordered to be issued by the unanimous vote of the mayor and the city council at a regular meeting thereof, duly held according to the statute, and after deliberation on the subject of the said judgments each warrant was duly issued and delivered; that the warrants payable to the Manchester Savings Bank were presented by it to the city treasurer of the defendant on February 18, 1898, for payment, but payment was refused for want of funds, and the warrants payable to the Bank of British Columbia were presented by it to said city treasurer for payment on February 19, 1898, but payment was refused for want of funds; that in the year 1898 the warrants issued to said two last-named judgment creditors were transferred and assigned to the plaintiff at their then fair market value, in the ordinary course of banking business, and without notice of any intention on the part of the defendant to contest the payment thereof; that there was no fraud or fraudulent collusion or acquiescence in the payment of an unlawful claim on the part of the mayor and city council in authorizing the payment of said judgments by said warrants.

The findings set forth the taxes levied for the payment of indebtedness from the indebtedness fund of the defendant from and including the year 1899, and to and including the year 1908, and found that no levy for the payment of indebtedness from that fund had been made since the levy of 1908, and the court found that the defendant since 1898 had realized from delinquent tax collections and otherwise for its indebtedness fund certain sums to the credit of that fund, of which it had applied portions to the payment of its outstanding indebtedness prior in rank to the warrants numbered from 2 to 159 as aforesaid, and had transferred certain other portions from the indebtedness fund, and had used them for other purposes, and that no call for any warrants drawn on the indebtedness fund, excepting Nos. 1 and 160, has been issued, nor have any such warrants been paid, except said two warrants and warrant No. 2, which was paid pursuant to a judgment of the court below in the case of Perkins v. Intermela, affirmed by this court in Intermela v. Perkins, 205 Fed. 603, 123 C. C. A. 619. And the court found that there was due to the plaintiff from the defendant $13,952.80, with interest at 6 per cent. per annum on $6,072.80 thereof, from February 18, 1898,

241 F.—3

and on $7,880 thereof from February 19, 1898. As conclusions of law the court found that the warrants in suit are valid and subsisting liabilities of the defendant for the amount of their face, and the accrued interest from their respective dates of presentation and refusal to pay; that the defendant is estopped by the judgments from relying on any defense which might have been pleaded to the actions in which those judgments were entered, including the defense that the defendant was not liable on the causes of action sued on in said former actions, and the defense that it was already indebted beyond its constitutional limit; that it was the defendant's duty to levy a property tax to the amount of six mills on the dollar of assessed valuation for the indebtedness fund during each year, beginning with 1898, and to apply the proceeds according to law until the warrants in suit with accrued interest were paid; and that the plaintiff is entitled to judgment against the defendant in the sum of $13,952.80, with accrued interest as stated in the findings of fact, and with the costs of the action, and to the process of the court to enforce payment.

U. D. Gnagey, of Port Townsend, Wash., and L. B. Stedman, of Seattle, Wash., for plaintiff in error.

Charles E. Shepard, of Seattle, Wash., for defendant in error.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). The defendant presents certain questions which were determined by this court in Intermela v. Perkins, 205 Fed. 603, 123 C. C. A. 619. Those questions were carefully considered, both on the original hearing and on a petition for rehearing, and a petition to the Supreme Court for certiorari was denied. Intermela v. Perkins, 231 U. S. 757, 34 Sup. Ct. 324, 58 L. Ed. 468. One of the questions so decided, and now again presented, was whether the city council of the defendant, which met at a regular session on February 15, 1898, and took recess until a designated hour on February 16th, and thereupon took a further recess until a designated hour on February 17th, could, upon said last-named date, lawfully authorize the issuance of the warrants, in view of the Code provision which inhibited the passing of any ordinance or the allowance of any bill for payment of money at a special meeting, or at any adjourned regular meeting of a city council. We held that such an adjournment taken from day to day does not interrupt the business of the session, that it was the intention and purpose of the council to hold a continuous session, and that such adjournments were permissible, as within the intendment of the statute.

But it is said that facts are presented in the case at bar which were not before the court in the Intermela Case. Attention is directed to the fact that in the latter case it was said in the opinion that the council met on February 15, 1898, at a regular meeting "and, finding itself unable to complete or transact the business in hand, took a recess * * * until another day, at which time the business in hand was completed"; whereas in the case at bar it is proven that the regular meeting of February 15th was a short meeting, and that all pending business might have been transacted at that time, and that the recess was taken because the council was not yet ready to act. Conceding this to be true, it does not take the case out of the rule of the Intermela decision, nor does it create a distinction in principle between that case and this. On the other hand, its tendency is to show that the three

sessions were in fact but one meeting, and for the consummation of a single purpose. That purpose was the compromise settlement and adjustment of the judgments against the defendant.

Counsel for the defendant cite Seymour v. Ellensburg, 81 Wash. 365, 142 Pac. 875, a decision subsequent in date to the Intermela Case, as establishing the rule that powers granted to the officers of municipal corporations must be strictly construed, and deciding that, when warrants are drawn upon a city treasurer under a charter which requires that the warrant shall specify for what purpose the same is drawn, and out of what fund it is to be paid, the statute is mandatory, and the warrant is void if it fails to specify the purpose. But there is nothing in that case that conflicts with the decision of this court in the Intermela Case. This court did not fail to recognize that the statute under consideration in that case was mandatory, but held that the meeting at which the warrants were issued was not an adjourned meeting within the meaning of the statute.

Again, we held in the Intermela Case that the superior court of the state of Washington, in the exercise of its general jurisdiction, had the authority to determine whether the city became liable generally on contracts for local improvements where its officers had omitted, through neglect of duty or through irregularity of procedure, to make proper assessments for such improvements, and that having such jurisdiction a judgment holding the city to be liable, whether correct or erroneous, was conclusive against the city, and a bar to subsequent contests of the validity of a city warrant issued in payment of a judgment on the same ground. Upon the question whether the defendant in incurring its liability to the plaintiff's assignors exceeded its constitutional debt limit, there is nothing in the present case to distinguish it from the Intermela Case, and it is unnecessary to add to what was there said.

[1] Questions not presented in the Intermela Case are based upon the assignments that the court erred in refusing to find that, at the time when the warrants were issued, the city authorities of the defendant had full knowledge of the decision of the Supreme Court of the state in German-American Savings Bank v. City of Spokane, 17 Wash. 315, 49 Pac. 542, 38 L. R. A. 259, that judgments were entered in all of said suits by the consent of the city officers, that no appeals were taken, and that the warrants were issued in pursuance of a special agreement between certain street grade warrant holders and the city council. The defendant had alleged in its answer that the judgments in the superior court were obtained by fraud, and that the warrants made in payment thereof were issued clandestinely, in fraud of the citizens and taxpayers of said city, and in direct violation of the decision of the Supreme Court of the state. There is no evidence in the record to support any allegation of fraud. There is nothing to show that the judgments were taken by consent. The fact that eight cases were all tried in one day is not sufficient in itself to create even a suspicion that the plaintiff's claims were not contested. Nor is it an indication of consent or fraud that, after the judgments were taken, and before the time for appealing expired, the city council were advised by an

attorney whom they consulted that they had a good defense to said
actions, and could defeat all of the same on appeal, and yet no appeal
was taken. There is nothing in the evidence to render applicable to
the case the decision in Kane & Co. v. Ind. Dist. of Rock Rapids, 82
Iowa, 5, 47 N. W. 1076, cited by the defendant. In that case, in an
action which was brought upon a judgment obtained against a school
district, it appeared that the directors purposely and intentionally failed
to appear and defend, and allowed judgment to be entered by default.
The court, in view of the evidence, said:

"In our opinion, the evidence in this case shows that both the parties to
that action intended that the plaintiff should recover judgment."

It is contended that the findings of fact are insufficient to show
that the plaintiff is entitled to a judgment, in that they fail to show
the condition of the indebtedness fund within the rule of this court
in First Nat. Bank of Central City v. City of Port Townsend, 184
Fed. 574, 106 C. C. A. 554, and the decision of the state court in State
ex rel. American Freehold-Land Mortgage Co. v. Mutty, 39 Wash.
624, 82 Pac. 118, and that the court below found only that certain
levies had been made for the indebtedness fund prior to 1908, and that
no levy had been made since that year. The act of 1897 (chapter 84,
Session Laws of Washington of that year) creates, in cities of the class
of Port Townsend, a current expense fund and an indebtedness fund,
and requires the city to levy annually a property tax, not to exceed
10 mills, for the current expense fund, and a tax not to exceed 6
mills for the payment of indebtedness, and that in making the levy,
consideration shall be taken of all outstanding warrant certificates, and
all other obligation and indebtedness of the city, with interest thereon,
for the payment of which no provision is otherwise made by law, and
it provides that all moneys collected on and after February 1, 1898,
from taxes of 1896 and previous years, and the penalties and interest,
shall be paid into the indebtedness fund. The findings of the court
and the stipulations of fact show the disposition of all taxes under
the law of 1897. They show, moreover, that the aggregate of the
levies from 1898 to 1908, inclusive, was on the average less than 1.2
mills per annum, and it is stipulated that the only remaining asset of
the indebtedness fund is the sum of $527.07, which "now stands on
the treasurer's books." There may perhaps be added to the asset so
stated the right to demand the return to the indebtedness fund of
$3,797.60 transferred from that fund to the sinking fund and the
current expense fund in the years 1898, 1909, and 1910, by order of the
city council. As to the omission of a finding concerning the disposi-
tion of funds possibly collected since 1905 from the delinquent tax
rolls of the years 1891 to 1897, inclusive, it is sufficient to point to the
decisions of the state court holding that a presumption of payment
of a debt through lapse of time applies to tax obligations. Graves v.
Stone, 76 Wash. 88, 135 Pac. 810, Ann. Cas. 1915D, 182; Seymour
v. Ellensburg, 81 Wash. 365, 142 Pac. 875.

[2] In answer to the contention that the complaint is defective, in
that it fails to allege that a demand was made on the city council for

a levy for the indebtedness fund, it is sufficient to say that the allegations of the complaint show that such a demand would have been vain and useless. 26 Cyc. 330; United States v. Auditors of Town of Brooklyn (C. C.) 8 Fed. 473. In United States v. Saunders, 124 Fed. 124, 59 C. C. A. 394, it was held that no such demand is necessary before instituting proceedings for mandamus, where the statute imposes upon the municipal officers the duty to levy it, or where that duty under the law is plain, or where it is manifest that such a demand would be an idle ceremony; and in State v. Byrne, 32 Wash. 264, 73 Pac. 394, it was held that, where county commissioners had refused to levy a special tax to pay school bonds, and the law imposed on such commissioners the imperative duty of levying the tax sought, a demand on the commissioners to levy such tax by the owner of the bonds was not a condition precedent to his right to maintain mandamus to compel such levy.

[3] Also without merit is the contention that the action is barred by the statute of limitations. The defendant admits that in the state of Washington an action on a municipal warrant is not barred until six years after notice has been given that there is money in the treasury to pay it, but contends that the present action is barred for the reason that it was not begun until 1910, whereas the plaintiff might have brought it more than six years earlier, and cites Quaker City National Bank v. Tacoma, 27 Wash. 259, 67 Pac. 710. In that case the court held that the payment of warrants drawn on a special fund, which had been issued subsequent in time to the plaintiff's warrant on that fund, is such a misappropriation of moneys of the fund as to render the city liable, not upon contract, but upon tort, and that such an action must be commenced within three years after the cause of action accrues. That decision has nothing to do with the present case. Here the action is upon contract. The plaintiff's right to bring an action on the warrants had confessedly not been barred by the statute, and although the plaintiff might have commenced its action sooner than it did, it was not compelled to do so, and it seems to have delayed action, relying on its hope that the city would recognize and fulfill its duty, a duty which was expressly imposed upon it by statute. There is no enactment of the state of Washington applying the statutes of limitation directly to mandamus proceedings. In such a case:

"It is common to apply them by analogy, and, while it is difficult to lay down any fixed rule as to the time when the writ will be barred, it may be said in a general way that it must be brought within the period fixed for that particular form of civil action or proceeding which may be brought to enforce the right which is the subject of the writ." 26 Cyc. 395; Berkey v. Board of Commissioners, 48 Colo. 104, 110 Pac. 197, 20 Ann. Cas. 1109; Freehill v. Chamberlain, 65 Cal. 603, 4 Pac. 646; Chicago, K. & W. R. Co. v. Com'rs of Chase County, 49 Kan. 399, 30 Pac. 456; Chinn v. Trustees, 32 Ohio St. 236; Duke v. Turner, 204 U. S. 623, 27 Sup. Ct. 316, 51 L. Ed. 652, 9 Ann. Cas. 842; Milster v. Spartanburg, 68 S. C. 26, 46 S. E. 539; Territory ex rel. Tanner v. Potts, 3 Mont. 365.

We find no error. The judgment is affirmed.